### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **KAVITHA THATIKONDA,** | |
| *Plaintiff,* | |
| v. | Case No. 1:21-cv-1564-RCL |
| **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.,* | |
| *Defendants.* | |

### MEMORANDUM OPINION

Plaintiff Kavitha Thatikonda is a citizen and resident of India who previously lived and worked in the United States pursuant to a nonimmigrant program for workers in "specialty occupations." She sued defendants—various government entities responsible for administering federal immigration laws—after a State Department consular officer denied her visa pursuant to a U.S. Citizenship and Immigration Services ("USCIS") finding that she was inadmissible. *See* Compl., ECF No. 1. Defendants moved to dismiss, Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 14, Thatikonda filed an opposition, Pl.'s Opp'n, ECF No. 15, and defendants filed a reply in support of their motion, Defs.' Reply, ECF No. 18. Thatikonda then moved, over objection, to file a sur-reply. *See* ECF Nos. 19 & 19-1.

Upon consideration of the parties' filings, ECF Nos. 14, 15, 18, 19, and 19-1, applicable law, and the entire record herein, the Court will hereby **GRANT** defendants' motion to dismiss by separate order.

## I.    BACKGROUND

### A. Statutory and Regulatory Framework

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, distinguishes between two categories of foreign nationals seeking admission to the United States: "nonimmigrants," who plan to stay in the country only temporarily, and "immigrants," who plan to stay permanently. *Save Jobs USA v. Dep't of Homeland Sec.*, 942 F.3d 504, 506 (D.C. Cir. 2019). The INA specifically authorizes the admission of nonimmigrants to work in "specialty occupation[s]," 8 U.S.C. § 1101(a)(15)(H)(i)(b), defined as those requiring "theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States," *id.* § 1184(i)(1). "Specialty workers admitted under this provision receive H-1B visas, which permit them to work in the occupation for which they were admitted." *Save Jobs USA*, 942 F.3d at 506.

Employers interested in participating in the H-1B program must complete a two-step process for each foreign worker they seek to hire. First, they submit a Labor Condition Application ("LCA") to the Department of Labor identifying the specialty occupation position at issue and confirming that they will comply with the program's requirements. 8 U.S.C. § 1182(n)(1). After the Department of Labor certifies the LCA, the employer may file the LCA and a nonimmigrant temporary worker petition (known as a Form I-129) on behalf of a prospective foreign employee. *Id.* § 1184(c); *see* 8 C.F.R. § 214.2(h)(4). Petitions are considered by USCIS, which is part of the Department of Homeland Security ("DHS"). *Sagarwala v. Cissna*, 387 F. Supp. 3d 56, 60 (D.D.C. 2019).

An alien may not be admitted to the United States without having been issued an immigrant or nonimmigrant visa. 8 U.S.C. §§ 1181(a), 1182(a)(7). Once an H-1B petition is granted, an

alien can apply for a visa at a U.S. Consulate or embassy. *See, e.g., L. Off. of Azita Mojarad v. Aguirre*, No. 05-cv-38 (CKK), 2006 WL 785415, at *1 (D.D.C. Mar. 27, 2006).   There, a State Department consular officer decides whether to grant or refuse the visa application. *See* 8 U.S.C. § 1201(a)(1); 22 C.F.R. §§ 42.71, 42.81.   With certain exceptions not relevant here, no visa "shall be issued to an alien" if "it appears to the consular officer . . . that such alien is ineligible to receive a visa . . . under section 1182 of this title, or any other provision of law," or if "the consular officer knows or has reason to believe" that the alien is ineligible. 8 U.S.C. § 1201(g).   Also, State Department regulations require the consular officer to "suspend action in a petition case and return the petition . . . for reconsideration by DHS . . . if the officer knows or has reason to believe that approval of the petition was obtained by fraud, misrepresentation, or other unlawful means, or that the beneficiary is not entitled, for some other reason, to the status approved." 22 C.F.R § 42.43(a).

## B. Factual Background and Procedural History

Unless otherwise noted, the relevant facts are drawn from Thatikonda's complaint and are assumed to be true for purposes of the motion to dismiss.  Thatikonda is a citizen and resident of India.  Compl. ¶ 15.  In September 2014, Thatikonda's prior employer, Green Valley SNF, LLC DBA Atlantic Shores Rehabilitation and Health Center ("Green Valley"), filed a petition on her behalf to employ her in H-1B status.  *Id.* ¶ 31.  USCIS approved the petition for a period between September 2014 through August 2017.  *Id.*  Thatikonda traveled from the United States to India where she was issued an H-1B visa by the Hyderabad Consulate on or about September 30, 2014. *Id.* ¶ 32.[1]

---

[1] Thatikonda was initially admitted into the United States in 2010 to enroll in a Master's Degree Program at Troy University.  Compl. ¶¶ 25–26.

Before her existing H-1B approval expired, Green Valley filed another H-1B petition to continue employing Thatikonda. *Id.* ¶ 34.  USCIS approved the requested extension for a period between August 2017 and August 2020.  *Id.*  Thatikonda again traveled back to India to apply at the Hyderabad Consulate for a visa based on the approved H-1B Petition. *Id.* ¶ 35.  At her visa interview, the consular officer refused to issue Thatikonda a visa, citing 8 U.S.C. § 1182(a)(6)(C)(i). *Id.* ¶ 36.  This provision of the INA provides that "any alien who, by fraud or willfully misrepresenting a material fact" tries to obtain an immigration benefit "is inadmissible." 8 U.S.C. § 1182(a)(6)(C)(i); *see* Compl. ¶ 57.  Thatikonda was provided with a written statement of the refusal citing the statutory provision. *Id.*; *see* ECF No. 1-4 at 2.  On or about September 29, 2017, Thatikonda attended a second visa application interview at the Hyderabad Consulate. Compl. ¶ 37. Thatikonda was again refused a visa pursuant to 8 U.S.C. § 1182(a)(6)(C)(i). *Id.*; *see* ECF No. 1-4 at 3.

Through the Freedom of Information Act ("FOIA") process and her counsel's requests, Thatikonda discovered that the § 1182(a)(6)(C)(i) "inadmissibility finding" was "originally made by Department of Homeland Security, U.S. Citizenship and Immigration Services." *Id.* ¶ 45; *see* ECF No. 1-11 at 2.[2]

On June 8, 2021, Thatikonda filed the present lawsuit "seek[ing] judicial review of [d]efendants' decision to make a finding of inadmissibility pursuant to 8 U.S.C. § 1182(a)(6)(C)(i), barring Thatikonda from eligibility for any immigration benefit, particularly issuance of a visa and

---

[2] The Court is puzzled about how to classify this "inadmissibility finding."  Thatikonda's description of the statutory and regulatory process suggests that she believes that USCIS formally determined that she is inadmissible.  But that characterization is at least partially belied by the fact that USCIS *approved* Thatikonda's H-1B petition.  If USCIS had formally determined that the statements in Thatikonda's petition "were inaccurate, fraudulent, or [constituted a] misrepresent[ation of] a material fact," it presumably would have denied (or revoked) her petition.  *See* 8 C.F.R. § 214.2(h)(10)(ii), (h)(11)(iii)(A).  As far as the Court knows, this "finding" could be a scribbled notation in her file.  Or USCIS may have failed to act before the consular officer denied the visa.  At bottom, Thatikonda's allegations and attachments to her complaint provide no clarity on this issue.  Nevertheless, the Court will adopt Thatikonda's term that USCIS issued an "inadmissibility finding" in its analysis below.

admission to the United States, and including filing a Form I-485, Application to Register Permanent Residence or Adjust Status." Compl. ¶ 51. She contends that defendants' actions are procedurally and substantively flawed and contrary to the INA, the Administrative Procedure Act ("APA"), and the Fifth Amendment's Due Process Clause. *See Id.* ¶¶ 49–90. She seeks declaratory and injunctive relief to "set aside the [d]efendants' actions, findings, and conclusions regarding the finding of inadmissibility," including an order that the § 1182(a)(6)(C)(i) finding be "purged from all databases utilized by [d]efendants to adjudicate [her] admissibility." *Id.* at 21.

Defendants moved to dismiss, arguing that the consular officer's decision is foreclosed by the doctrine of consular nonreviewability and that Thatikonda lacks standing to challenge the visa refusal. *See, e.g.*, Defs.' Mot. 1, 6–11.[3] Thatikonda filed an opposition, arguing that consular nonreviewability does not apply because she is not challenging the consular officer's decision to deny her visa application, but instead challenging the inadmissibility finding made by USCIS. Pl.'s Opp'n 5–6. She also contends that she has standing because of her contacts with the United States. *Id.* at 7–8. Defendants filed a reply in which they contend that Thatikonda attempts to improperly evade the consular nonreviewability doctrine. *See* Defs.' Reply 7. Thatikonda then moved, over objection, to file a sur-reply, in which she argues that her complaint is ripe for review. *See* ECF Nos. 19 & 19-1.

Defendants' motion to dismiss is ripe for review.

---

[3] Defendants attached a Notice of Intent to Revoke the I-140 Petition—Immigrant Petition for an Alien Worker—issued by USCIS and based on the same grounds on which the consular officer relied. That action is not at issue in this case. *See* ECF No. 14-1.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(1)

A court must dismiss a case pursuant to Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction. In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted); *see Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.").

While a court must accept the factual allegations contained in the complaint as true when reviewing a motion to dismiss pursuant to Rule 12(b)(1), *Info. Handling Servs., Inc. v. Def. Automated Printing Servs.*, 338 F.3d 1024, 1029 (D.C. Cir. 2003), a plaintiff's factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim," *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170 (D.D.C. 2007) (internal citations and quotation marks omitted). The plaintiff bears the burden of establishing subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.  Rule 12(b)(6)

To withstand a Rule 12(b)(6) motion, the complaint (and each challenged count) "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the Court can reasonably infer from the factual content pleaded that the defendant is liable for the alleged misconduct. *Id.* When

6

reviewing a motion to dismiss under Rule 12(b)(6), courts must accept as true all of the plaintiff's allegations of fact, and must also "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). "However, the court need not accept inferences . . . [that] are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

### III.    ANALYSIS

Thatikonda recognizes that the decisions of consular officers are ordinarily not reviewable. So she tries to avoid these justiciability concerns by focusing on the fact that USCIS made the inadmissibility finding on which the consular officer relied when he denied her visa. As the analysis below explains, Thatikonda has standing to bring her challenge. But she has standing because her concrete interests in admissibility were harmed by the consular officer's decision, not USCIS's finding. Thatikonda's complaint thus returns her right back to the place she hoped to avoid. Her claims are not reviewable and must be dismissed.[4]

### A.  Thatikonda Has Standing[5]

To demonstrate standing, Thatikonda must show the existence of a case or controversy, which requires (1) an "injury in fact" that is (2) "fairly traceable to the challenged action of the

---

[4] The Court will **DENY** Thatikonda's motion to file a sur-reply. First, the issues addressed in the sur-reply have no relevance to the Court's holdings here. Second, and more importantly, defendants do not make the argument in reply that Thatikonda believes them to be making—that the claims in her complaint are not ripe for review. *See* ECF No. 19-1 at 2. Instead, defendants contend that a challenge to the *Notice of Intent to Revoke the I-140 Petition* is not ripe because USCIS has not yet issued a final decision. Defs.' Reply 4. If defendants did make the argument that Thatikonda identified for the first time in their reply, the Court would grant Thatikonda leave to file a sur-reply so that she would have an opportunity to contest these issues. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D.D.C. 2001).

[5] The Court begins with subject matter jurisdiction and Article III standing—not consular nonreviewability—because it is prohibited from exercising "hypothetical jurisdiction." *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998). The D.C. Circuit recently held that consular nonreviewability goes to the "merits" of a case, rather than a federal court's subject matter jurisdiction. *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1029 (D.C. Cir. 2021). While the Court may address certain non-jurisdictional "threshold issues" without assessing jurisdiction, *see, e.g.,*

defendant" and is (3) likely to be "redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61. An "injury in fact," in turn, requires (1) an "invasion of a legally protected interest" that is (2) "concrete and particularized" and (3) "actual or imminent." *Id.* at 560; *see Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).  For the reasons set forth below, the Court concludes that Thatikonda has standing here.

Defendants invoke case law from this district holding that unadmitted, non-resident aliens lack standing to challenge the determinations associated with their visa decision. *See, e.g.*, *Van Ravenswaay v. Napolitano*, 613 F. Supp. 2d 1, 5 (D.D.C. 2009); *Chun v. Powell*, 223 F. Supp. 2d 204, 207 (D.D.C. 2002); *see also Jaimez-Revolla v. Bell*, 598 F.2d 243, 246 (D.C. Cir. 1979); *but see Matushkina v. Nielsen*, 877 F.3d 289 (7th Cir. 2017) (concluding that an alien's interest in admissibility is sufficient for Article III standing).  "This line of jurisprudence reflects the fact that 'foreign nationals seeking admission have no constitutional right to entry.'" *Polyzopoulos v. Garland*, No. 20-cv-804 (CKK), 2021 WL 1405883, at *7 (D.D.C. Apr. 14, 2021) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2419 (2018)).  Without a "legally protected interest," plaintiffs lack the "injury in fact" necessary for Article III standing. *Spokeo*, 578 U.S. at 339; *see Pai v. U.S. Citizenship & Immigr. Servs.*, 810 F. Supp. 2d 102, 106–07 (D.D.C. 2011).

The Court is not persuaded. "In reviewing the standing question, the court must be careful not to decide the questions on the merits for or against the plaintiff, and must therefore assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. E.P.A.*, 320 F.3d 228, 235 (D.C. Cir. 2003) (citing *Warth v. Seldin*, 422 U.S. 490, 502 (1975)). Accordingly, the Court must assume, for purposes of the standing inquiry, that defendants'

---

*Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 513, 516 (D.C. Cir. 2018), the government defendants have provided no authority that consular nonreviewability qualifies as such a threshold issue and may be considered before assessing subject matter jurisdiction.  Absent briefing on this issue, the Court begins with Article III standing.

inadmissibility finding against Thatikonda was unlawful.  Nevertheless, Thatikonda must be able to identify "a cognizable interest" to demonstrate Article III standing.  *Parker v. District of Columbia*, 478 F.3d 370, 377 (D.C. Cir. 2007), *aff'd sub nom. District of Columbia v. Heller*, 554 U.S. 570 (2008); *Sargeant v. Dixon*, 130 F.3d 1067, 1069 (D.C. Cir. 1997).  Cognizable interests are those "recognized at common law or specifically recognized . . . by Congress."  *Sargeant*, 130 F.3d at 1069; *see Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 274 (2008) ("We have often said that history and tradition offer a meaningful guide to the types of cases that Article III empowers federal courts to consider.").

Thatikonda's claims are cognizable.  There are material differences in the rights available to "alien[s] seeking initial admission"—who "ha[ve] no constitutional rights regarding [their] application[s]"—and those who have "gain[ed] admission to our country and begin[] to develop the ties that go with permanent residence."  *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *accord Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1963–64 (2020) (explaining that Congress "is entitled to set the conditions for an alien's lawful entry into this country," precluding "any greater rights under the Due Process Clause," but that "aliens who *have* established connections in this country have due process rights in deportation proceedings" (emphasis added)).  Indeed, the D.C. Circuit has recognized that denying standing to a "nonresident alien who had never been within the United States" is "based on jurisprudential considerations that reflect a policy against affording a [f]ederal forum for a person anywhere in the world challenging denial of entry or immigration status."  *Jaimez-Revolla*, 598 F.2d at 246.  But denying standing to a party "who had been in this country and voluntarily left to pursue [her] request for readmission . . . would encourage illegal aliens to remain here illegally rather than return home and seek legal entry through an application for readmission."  *Id.* at 246.  Additionally, other decisions recognize that

the loss of "'a significant opportunity to receive an immigrant visa . . . is itself a concrete injury'

cognizable by the federal courts." *Rossville Convenience & Gas, Inc. v. Garland*, No. 20-cv-2218

(JDB), 2021 WL 5865446, at \*7 (D.D.C. Dec. 10, 2021) (quoting *Patel v. U.S. Citizenship &

Immigration Servs.*, 732 F.3d 633, 637–38 (6th Cir. 2013)); *see Matushkina*, 877 F.3d at 293 ("A

right of entry, however, is not a prerequisite to standing in the case of someone seeking entry to

the United States."). Here, Thatikonda worked and lived in the United States for several years

before returning to India, where she applied for a visa. The "jurisprudential considerations" that

ordinarily mitigate against standing for unadmitted, nonresident aliens challenging consular

decisions in foreign countries are simply not present in this case.

That does not mean that Thatikonda's suit surmounts other threshold doctrines barring

review of her claim. Indeed, the analytical challenge in this case stems from the overlap between

the standing and consular nonreviewability inquiries. Thatikonda recognizes the justiciability

concerns inherent in a challenge to a consular officer's visa determination, so she contends that

she is *only* challenging DHS and USCIS's allegedly unlawful "inadmissibility funding," and not

her visa denial. *See, e.g.*, Pl.'s Opp'n 5–6. When a plaintiff sues based on a "procedural injury"—

or an agency's failure to act according to an applicable statutory or regulatory framework—that

claim "must be tethered to some concrete interest adversely affected by the procedural deprivation:

'[A] procedural right *in vacuo* . . . is insufficient to create Article III standing." *WildEarth

Guardians v. Jewell*, 738 F.3d 298, 305 (D.C. Cir. 2013) (quoting *Summers v. Earth Island Inst.*,

555 U.S. 488, 496 (2009)) (alterations in original). The concrete interests to which USCIS's

alleged procedural violation is tethered are Thatikonda's interest in admissibility to the United

States and economic interests related to her American employment. *See, e.g.*, Compl. ¶ 10 ("As a

result, [p]laintiff suffers the hardships of unreasonably and unlawfully being deprived of

admissibility to the United States, as well as certainly being at risk of losing employment . . . ."). The injuries that Thatikonda suffered to both concrete interests "actually exist," *Spokeo*, 578 U.S. at 340, *because the consular officer denied her visa*. Up until the consular officer rendered a decision, the inadmissibility finding itself had no effect on her concrete interests. Indeed, USCIS had *approved* her employer's H-1B petition, which entitled Thatikonda to apply for a visa.[6]

Thatikonda's syllogistic journey thus returns her to the decision that she wishes to avoid. Her claims are, for the reasons discussed in the following section, barred by the doctrine of consular nonreviewability. But for purposes of Article III standing, Thatikonda has sufficiently alleged an injury in fact. Article III causation and redressability are straightforward here. The alleged injury is causally connected to defendants' conduct: USCIS's inadmissibility finding was the basis of Thatikonda's visa denial. *See, e.g.*, Compl. ¶ 47. And in theory, a court order setting aside the finding would remove an obstacle to a positive visa application. *See Ctr. for Biological Diversity v. Env't Prot. Agency*, 861 F.3d 174, 185 (D.C. Cir. 2017) (explaining that a procedural-rights plaintiff faces a "relaxed redressability requirement" and need not show that "court-ordered compliance with the procedure would alter the final agency decision," but only that "there remains at least the possibility that it could reach a different conclusion" (cleaned up)).

Thatikonda has standing to bring her claims.

## B. Thatikonda's Claims Are Barred By The Doctrine of Consular Nonreviewability

The doctrine of consular nonreviewability recognizes that Congress has empowered consular officers with the exclusive authority to review a proper application for a visa when made overseas. *See* 8 U.S.C. §§ 1104(a); 1201(a), (g). Thus, in practice, "decision[s] to issue or

---

[6] Thatikonda makes no effort to tie this alleged procedural injury to any other past or future concrete injury. To the extent that Thatikonda intended to present a different theory of standing, she has not met her burden to do so. *See Lujan*, 504 U.S. at 561.

withhold a visa [are] not subject to judicial review, at least unless Congress says otherwise." *Joorabi v. Pompeo*, 464 F. Supp. 93, 100 (D.D.C. 2020) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159 (D.C. Cir. 1999)). "This rule applies even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual error." *Van Ravenswaay*, 613 F. Supp. 2d at 4 (quoting *Chun*, 223 F. Supp. 2d at 206).

To the extent that Thatikonda attempts to challenge the consular officer's decision to deny her visa, such a challenge is squarely foreclosed by the doctrine of consular nonreviewability. Indeed, Thatikonda does not contend otherwise, or invoke any exception to the doctrine. Pl.'s Opp'n 2 ("Plaintiff understands that her visa can be refused at the whim of the Consular Officer and the Court would decline to review that decision."). Instead, she argues that she is *not* challenging a consular officer's decision, but instead, DHS and USCIS's "unlawful[] . . . determination of inadmissibility." Pl.'s Opp'n 5. Her attempt to skirt past the consular nonreviewability bar cannot succeed.

The doctrine of consular nonreviewability applies even "where a plaintiff attempts to circumvent the doctrine by claiming the [s]he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010); *see, e.g., Al Makaaseb Gen. Trading Co. v. Christopher*, No. 94-cv-1179 (CSH), 1995 WL 110117, at *3 (S.D.N.Y. Mar. 13, 1995) (rejecting a challenge to the inclusion of a visa applicant on lookout list because "such a challenge cannot be divorced from an attack of the decision itself"). This Court is "not required to take . . . plaintiff's word that she is not challenging

the visa denial." *Matushkina*, 877 F.3d at 295.  Here, Thatikonda's challenge to the USCIS finding cannot be divorced from her attack on the consular officer's decision to deny her visa.

In a case with similar circumstances, the Seventh Circuit applied the consular nonreviewability bar. *See Matushkina*, 877 F.3d at 295.  In *Matushkina*, the plaintiff sued to challenge an inadmissibility finding entered in the Customs and Border Patrol ("CBP") lookout system. *See id*.  A U.S. Consulate denied Matushkina's visa application based on that inadmissibility finding. *Id.* at 291.  Matushkina's requested relief was similar to Thatikonda's: "[s]he wanted the district court to declare invalid CBP's determination that she misrepresented something on her earlier visa application and to declare that she did not make a material misrepresentation." *Id.* at 295; *see* Compl. 21 (requesting this Court to "[d]eclare unlawful and set aside the [d]efendants' actions, findings, and conclusions regarding the finding of inadmissibility made against Kavitha Thatikonda").  The Seventh Circuit concluded that Matushkina's requested relief was "telling"—her goal was to "remove an obstacle for her visa application, which is why she ha[d] standing to assert her claim." *Matushkina*, 877 F.3d at 295. This "indirect attack on the visa denial c[ould not] succeed." *Id.*

For the same reasons, the Court concludes that Thatikonda's suit is barred by the doctrine of consular nonreviewability.  Just as it made no difference that Matushkina challenged the CBP finding of inadmissibility, it makes no difference here that Thatikonda purports to attack a USCIS finding.  Thatikonda's requested relief is equally "telling"—she admits "[u]pon . . . receiving the requested relief, she will have a visa refused without any basis in law." Pl.'s Opp'n 6.  And as noted previously, it is the consular officer's unfavorable decisions that provide standing because they injured Thatikonda's concrete interests.  Without the consular officer's decisions, USCIS's "inadmissibility finding" was of no moment.  USCIS did not move forward with revoking her

H-1B status while she was in the United States and, in fact, had *approved* her employer's H-1B petition, which was a prerequisite for her to obtain a visa.

The D.C. Circuit recognizes only "two narrow circumstances" where consular decisions are subject to review. Neither exception is applicable here. First, "an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights." *Baan Rao Thai Rest.*, 985 F.3d at 1024; *see Trump v. Hawaii*, 138 S. Ct. at 2416; *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972). But Thatikonda is not an American citizen and she has no "constitutional right to entry." *Trump v. Hawaii*, 138 S. Ct. at 2419.

The second exception exists only if a statute expressly authorizes judicial review of the consular officer's action. *Baan Rao Thai Rest.*, 985 F.3d at 1025 (quoting *Saavedra Bruno*, 197 F.3d at 1159). While Thatikonda does not argue in her opposition that an exception to consular nonreviewability is applicable here, she does invoke several statutes in her complaint that purportedly authorize the review she seeks. But neither the APA,[7] nor the INA, nor the Mandamus Act, nor the Declaratory Judgment Act provide an exception to consular nonreviewability. *See Saavedra Bruno*, 197 F.3d at 1158 (holding that the APA provides no basis for challenging consular decisions); *Baan Rao Thai Rest.*, 985 F.3d at 1024 (explaining that the INA "grants consular officers 'exclusive authority to review applications for visas'" (quoting *Saavedra Bruno*, 197 F.3d at 1156)); *Carter v. U.S. Dep't of Homeland Sec.*, No. 1:21-cv-422 (RCL),

---

[7] The APA only authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. A final agency action is one that (1) "mark[s] the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature," *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997); and (2) is "one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" *Nat'l Ass'n of Home Builders v. Norton*, 415 F.3d 8, 13 (D.C. Cir. 2005) (quoting *Bennett*, 520 U.S. at 178). Here, the inadmissibility finding is not the "consummation" of USCIS's decisionmaking process. Indeed, the agency is still considering whether to revoke Thatikonda's immigration petition. Thus, the APA would independently preclude review here even if the decision was not barred by consular nonreviewability.

2021 WL 6062655, at *5 (D.D.C. Dec. 22, 2021) (collecting cases and explaining that the Declaratory Judgment Act and Mandamus Act provide no exception to consular nonreviewability).

Thatikonda's claims are barred by the doctrine of consular nonreviewability.

## IV.   CONCLUSION

Based on the foregoing, the Court will **GRANT** defendants' motion to dismiss by separate order.

Date: _____2- 11- 22_____

Royce C. Lamberth
United States District Judge